# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ANTHONY BOBULINSKI,

      Plaintiff,

v.

CASSIDY HUTCHINSON,

      Defendant.

Case No. 1:25-cv-00771-EGS

## DEFENDANT'S REPLY IN SUPPORT OF THE MOTION TO DISMISS
## PLAINTIFF'S FIRST AMENDED COMPLAINT

Edward T. Kang (D.C. Bar No. 1011251)
**ALSTON & BIRD LLP**
950 F Street NW
Washington, DC 20004-1404
Telephone: (202) 239-3300
Edward.Kang@alston.com

Christina Hull (*pro hac vice*)
Jyoti J. Kottamasu (*pro hac vice*)
Taylor Lin (*pro hac vice*)
**ALSTON & BIRD LLP**
1201 West Peachtree Street
Atlanta, GA 30309-3424
Telephone: (404) 881-7000
Christy.Hull@alston.com
Jyoti.Kottamasu@alston.com
Taylor.Lin@alston.com

*Counsel for Defendant*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ......................................................................................................... 1

ARGUMENT ............................................................................................................... 2

I.    Plaintiff's Defamation Claim Cannot Succeed as a Matter of Law. .................................. 2

    A.    The Alleged False Statement Is Not Defamatory and Not Actionable. .................. 2

    B.    Plaintiff Cannot Show Actual Malice. .................................................................... 5

        1.    Plaintiff is a limited-purpose public figure who must show Defendant acted with actual malice. ............................................................. 5

        2.    Plaintiff has failed to show any defamatory implication was made with actual malice. ...................................................................................... 7

II.    Plaintiff's Claims for Defamation by Implication and False Light Fail as a Matter of Law. ................................................................................................................................ 9

    A.    Plaintiff Cannot Establish an Actionable Defamatory Implication. ...................... 9

    B.    Plaintiff Fails to Plead the Necessary Elements of a False Light Claim. ............. 11

III.    The Court Should Deny Leave to Amend. ....................................................................... 12

CONCLUSION ............................................................................................................. 13

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ............................................................................... 2

*Atlanta Humane Soc'y v. Mills,*
274 Ga. App. 159 (2005)......................................................................... 8

*Barrett v. Atl. Monthly Grp. LLC*
2024 U.S. Dist. LEXIS 161266 (D.D.C. Sept. 9, 2024)...................... 11

*Bauman v. Butowsky,*
377 F. Supp. 3d 1 (D.D.C. 2019)..................................................... 3, 11

*Bentley v. Bunton,*
94 S.W.3d 561 (Tex. 2002) .................................................................... 4

*Bobulinski v. Tarlov,*
2024 U.S. Dist. LEXIS 214981 (S.D.N.Y Nov. 26, 2024)................. 6, 7

*Clemmons v. Acad. For Educ. Dev.,*
70 F. Supp. 3d 282 (D.D.C. 2014)...................................................... 3, 9

*DAG Enters. v. Exxon Mobil Corp.,*
2004 U.S. Dist. LEXIS 27393 (D.D.C. Feb. 2, 2004) ........................ 13

*Firestone v. Firestone,*
76 F.3d 1205 (D.C. Cir. 1996).............................................................. 13

*Fleming v. AT&T Info. Services, Inc.,*
878 F.2d 1472 (D.C. Cir. 1989)......................................................... 4, 5

*Guilford Transp. Indus., Inc. v. Wilner,*
760 A.2d 580 (D.C. 2000) .................................................................. 3, 9

*Jankovic v. Int'l Crisis Grp.,*
822 F.3d 576 (D.C. Cir. 2016).............................................................. 5, 6

*Jewell v. NYP Holdings, Inc.,*
23 F. Supp. 2d 348 (S.D.N.Y. 1998) ..................................................... 4

*Milkovich v. Lorain Journal Co.,*
497 U.S. 1 (1990) ............................................................................... 4, 5

*Myers v. Plan Takoma, Inc.,*
472 A.2d 44 (D.C. 1983) ........................................................................ 3

*New York Times Co. v. Sullivan,*
    376 U.S. 254 (1964) ................................................................................................. 8

*Parnigoni v. St. Columba's Nursery School*
    681 F. Supp. 2d at 8-10 ........................................................................................... 10

*Parsi v. Daioleslan,*
    890 F. Supp. 2d 77 (D.D.C. Sept. 13, 2012) ........................................................... 9

*Waldbaum v. Fairchild Publ'ns,*
    627 F.2d 1287 (D.C. Cir. 1980) ............................................................................... 6

*White v. Fraternal Order of Police,*
    909 F.2d 512 (D.C. 1990) ......................................................................................... 12

*Xereas v. Heiss,*
    933 F. Supp. 2d 1 (D.D.C. 2013) ............................................................................. 3

## OTHER AUTHORITIES

First Amendment ................................................................................................................ 7

## INTRODUCTION

The Amended Complaint fails to state a claim for which relief can be granted under the Constitution and the laws of the District. Plaintiff's opposition reinforces the Quixotic (and ultimately futile) nature of his legal quest against Defendant. Fourteen months after initiating this action in Georgia, Plaintiff contends here for the first time that on November 1, 2020, Defendant somehow aimed to frame Plaintiff as having "something to do with the leadup to the events on January 6, 2021, and why Defendant testified" to Congress about those events in June 2022. (Opp. at 4–5). Such allegations (which do not appear in the Amended Complaint itself) are not plausible, relying as it does on an assumption that Defendant can tell the future before it happens. Specifically, it would require that on a night in Rome, Georgia, on November 1, 2020, Defendant could have known that:

- President Trump was going to lose the 2020 election;

- President Trump was going to challenge the election results;

- On January 6, 2021, there was going to be an incursion on Capitol Hill to attempt to prevent the ratification of the election results;

- That attempt would fail;

- There would be congressional hearings into the events of January 6;

- She would be called to testify at those hearings;

- She would change lawyers;

- She would ultimately testify at the hearings;

- She would write a book about her life story with a publication date of September 26, 2023.

1

That is not the only implausible leap on which Plaintiff's opposition relies. Plaintiff also asks the Court to infer that Defendant knew the "true" nature of an impromptu meeting that she observed because, as Mr. Meadows's assistant, she was "privy to Mr. Meadows' meetings and the details of those meetings, even when not physically part of them." (Opp. at 11.) In other words, the viability of Plaintiff's claims hinge on an assertion that Defendant is both prescient and omniscient. Such wild conjectures cannot satisfy the requirement that Plaintiff plead plausible claims. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court should dismiss the Amended Complaint with prejudice.

## ARGUMENT

### I.     Plaintiff's Defamation Claim Cannot Succeed as a Matter of Law.

#### A.     The Alleged False Statement Is Not Defamatory and Not Actionable.

Plaintiff alleges only one false statement: that Defendant wrote that she saw Mr. Meadows hand Plaintiff "what appeared to be a folded sheet of paper or a small envelope." Desperate to infuse this statement with defamatory meaning, Plaintiff claims in his Opposition that it "implies Mr. Bobulinski's meeting with Mr. Meadows had something to do with the leadup to the events on January 6, 2021[.]" (Opp. at 4-5). This position is absurd on its face because the meeting between Mr. Bobulinski and Mr. Meadows that Defendant mentioned in her book occurred ***before*** the presidential election in 2020. No one—including Plaintiff and Defendant—could have predicted the outcome of the 2020 presidential election, the contest of that election, and the resulting events culminating in January 6, 2021. Therefore the defamatory meaning Plaintiff asserts is not plausible.

Moreover, to attempt to apply "critical context to the meeting and the alleged handoff," Plaintiff relies on Defendant's expressions of her subjective feelings, which are protected

expressions. The portions of Defendant's book on which Plaintiff relies to allege a "defamatory" context make abundantly clear that she was attempting to describe her own *feelings* about the meeting:

- "I had a weird feeling that we were in danger. I couldn't explain it, but the feeling was real." (FAC ¶ 49);

- "Please, Mark. This isn't a good idea. Just trust me." (*Id.*).

Because *feelings* are incapable of being proven true or false, they cannot form the basis of this defamation action. *See, e.g., Myers v. Plan Takoma, Inc.*, 472 A.2d 44, 48 (D.C. 1983) (holding that defendant's description of an interaction as "shady" was protected opinion, not "readily susceptible" to proof of truth or falsity"); *Xereas v. Heiss*, 933 F. Supp. 2d 1, 18 (D.D.C. 2013) (holding defendant's statements that the plaintiff was involved in "dishonest" and "deceptive" business practices were not actionable because they were not provably false); *Bauman v. Butowsky*, 377 F. Supp. 3d 1, 11 (D.D.C. 2019) (comments made by the defendant that he "[found plaintiff's] involvement with [a certain family] *extremely suspicious*" were expressions of opinion and not actionable) (emphasis added).

Moreover, Defendant also makes clear she did not know Plaintiff and did not herself understand the source of her unease. (*See* FAC ¶ 49). As such, a reasonable reader would glean that any concerns she had in observing the meeting were based on her *inexplicable feelings*, *not* facts. The District's law is clear: "If it is plain that a speaker is expressing a subjective view, . . . , rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable." *Clemmons v. Acad. For Educ. Dev.*, 70 F. Supp. 3d 282, 309 (D.D.C. 2014) (quoting *Guilford Transp. Indus., Inc. v. Wilner*, 760 A.2d 580, 597 (D.C. 2000)). By expressly telling the reader that she lacked "objectively verifiable facts," Defendant made abundantly clear that she was describing her subjective feelings.

As Plaintiff points out in his Opposition (*see* Opp. at 5), the larger context of this meeting lies in Defendant's internal reckoning about her political identity and work, which she ties to admittedly inexplicable **feelings** about this meeting (*E.g.,* "I could not shake the feeling" (FAC ¶ 49); "I still had a pit in my stomach" (*Id.* ¶ 61); "It was a painful realization, one without rationale" (*Id.*)). It is impossible to separate Defendant's uneasy feelings about the meeting between Plaintiff and Mr. Meadows from the swirl of doubt, fear, and personal revelations about her years of work for President Trump during his first term. Those expressions of personal feelings and ideas— especially in the context of political commentary—are constitutionally protected. "[A] statement of opinion relating to matters of public concern which does not contain a provable false factual connotation will receive full constitutional protection." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990).

Plaintiff cites only two cases to support his argument that Defendant's statements are actionable—but neither applies D.C. law. (*See* Opp. at 4 (citing *Jewell v. NYP Holdings, Inc.*, 23 F. Supp. 2d 348, 363 (S.D.N.Y. 1998); *Bentley v. Bunton*, 94 S.W.3d 561, 579 (Tex. 2002))). Plaintiff also largely ignores the bevy of cases applying D.C. law that Defendant cited in her brief. (Defendant's Motion to Dismiss Plaintiff's FAC, Dkt. 52 at 5-6, 9-10). Plaintiff attempts to distinguish only one, *Fleming v. AT&T Info. Servs., Inc.*, 878 F.2d 1472, 1475–76 (D.C. Cir. 1989), contending *Fleming* is inapposite because the defendant in that case "never actually made . . . an accusation" of fraud and there was no "additional context . . . that the defendant was implying the plaintiff did, in fact, commit fraud." (Opp. at 6). But Plaintiff himself concedes that all Defendant's statements amounted to was—at most—an implication that "this meeting was bad, **possibly** illegal." (*Id.* at 5 (emphasis added)). Plaintiff does not explain how this amounts to an "actual" accusation of illegal conduct. Moreover, in *Fleming*, the specific crime plaintiff claimed to have

been implicitly accused of—fraud—was expressly identified. Here, however, Plaintiff can only offer a vague description of something "bad, possibly illegal." Thus, the statements at issue in this case are even *less* "susceptible to interpretation as an accusation" of criminal activity than in *Fleming*. 878 F.2d at 1475.

Defendant's book, a memoir, describes *her* impressions of Plaintiff's meeting, contextualized by *her* feelings about *her* work for President Trump, all to ultimately explain *her* decision to testify before Congress regarding the events of January 6, 2021. In challenging her statements as defamation, Plaintiff seeks to litigate a case to prove the falsity of *an implication* that Defendant never articulated and that is too vague (something "bad") for Defendant to even defend. *See Milkovich*, 497 U.S. at 20.

**B.    Plaintiff Cannot Show Actual Malice.**

**1.    *Plaintiff is a limited-purpose public figure who must show Defendant acted with actual malice.***

In the Motion to Dismiss, Defendant established that Plaintiff was a limited-purpose public figure well before the book's publication based on the three-part test in *Jankovic v. Int'l Crisis Grp.*, 822 F.3d 576, 585–86 (D.C. Cir. 2016). First, Defendant identified the public controversy as "the political rivalry between President Trump and Mr. Biden." (Dkt. 52 at 14). Next, she explained that Plaintiff played a significant role in that controversy due to his "public statements about his business dealings with Hunter Biden and the alleged involvement of Mr. Biden." (*Id.* at 12). Finally, Defendant argued that the allegedly defamatory statements were "germane" to Plaintiff's participation in the political competition between President Trump and Mr. Biden because Defendant's public statements about Mr. Biden "further aligns Mr. Bobulinski with Present Trump." (*Id.* at 14).

To escape his status, Plaintiff argues an untenably narrow interpretation of "the scope of the controversy," limiting the controversy to ***the very meeting*** that is the subject of the allegedly defamatory statements. (Opp. at 9 ("Mr. Bobulinski and Mr. Meadows met well removed from public view.")). But this is contrary to law. "[C]ourts often define the public controversy in expansive terms," "broader than the narrower discussion contained in the defamatory document." *Jankovic*, 822 F.3d at 586; *see, e.g.*, *Waldbaum v. Fairchild Publ'ns*, 627 F.2d 1287, 1299 (D.C. Cir. 1980) (broadly defining public controversy for public figure analysis). To circumscribe a public controversy to a pinpoint in place and time would eviscerate the well-settled constitutional protections of speech about public figures.

Plaintiff's exceedingly limited scope also ignores his ***own*** allegations—which he deems germane enough to include in his Complaint—about his prior public statements about the Biden family (made at a press conference) as well as his meeting with Mr. Meadows, both of which occurred on the eve of a heated presidential election. Plaintiff's October 2022 press conference was not a *sui generis* event that took place in a vacuum; it was steeped in political engagement on topics of national discourse and attention. In the Amended Complaint, Plaintiff alleges, he "came forward" because he "decided to put principles ***above party***" and spoke about his business dealings allegedly with members of the Biden family and Chinese government officials and commercial entities. (FAC ¶¶ 13-21 (emphasis added)). Plaintiff alleges that these statements "thrust[ him] into the public spotlight," leading to an invitation from President Trump to attend a presidential debate as his guest, and later, death threats. (*Id.* ¶¶ 22, 52).[1]

---

[1] Plaintiff's description of the events appears to deliberately exclude mention of his October 2022 press conference, and instead references his March 2024 congressional testimony on the same topics. (*See* Dkt. 52 at 12–13 & n.4; FAC ¶ 18; *Bobulinski v. Tarlov*, 2024 U.S. Dist. LEXIS 214981, at *3, *19-20 & n.11 (S.D.N.Y Nov. 26, 2024)). Because his March 2024 congressional testimony relates to the same "high-profile public controversy" at issue in this case—the

The meeting at the heart of this case is part and parcel of that broad, preexisting political controversy. Plaintiff's own allegations make clear that Mr. Meadows's interest in meeting with Plaintiff germinated from Plaintiff's decision to publicly speak out about the Biden family. (*See id.* ¶¶ 52–53) (alleging Plaintiff attended the Rome, Georgia rally only "as a regular attendee would," and that when "Mr. Meadows, whom Mr. Bobulinski had met one week prior, became aware that Mr. Bobulinski was in attendance, [Meadows] asked to meet with him for the sole purpose of checking on his and his family's health and safety due to the ongoing threats against them [stemming from his "telling his firsthand account of the truth about the Biden family").

Because the Meadows meeting further associates Plaintiff with President Trump, Defendant's observations about it are clearly germane to Plaintiff's role in the political competition between President Trump and Mr. Biden.  In fact, Plaintiff admits this in the ***very first*** allegation of the Amended Complaint, alleging that "[b]ecause Mr. Bobulinski did not pledge blind loyalty to the Democrat Party and to the Biden family, but rather, was a guest of President Trump at a Presidential debate, Defendant, Cassidy Hutchinson, chose to viciously defame him." (*Id.* ¶ 1). Thus, Plaintiff's attempts to eschew his public figure status are wholly unavailing.

## 2.    *Plaintiff has failed to show any defamatory implication was made with actual malice.*

The sole factual allegation in the Amended Complaint that Plaintiff offers in support of his heavy constitutional burden to prove actual malice is his own say-so: he denies that he was handed a piece of paper, and he denies that there was anything "illicit, immoral, or illegal" about his meeting with Mr. Meadows. But if a plaintiff's bald denial were sufficient, it would vitiate any First Amendment protection as to an individual's observations about public figures, effectively

---

Presidential political rivalry—Plaintiff cannot distinguish the *Tarlov* case as "dealing with completely different facts." (Opp. at 10).

"transmuting criticism of government, however impersonal it may seem on its face, into personal criticism, and hence potential libel, of [public figures]." *New York Times Co. v. Sullivan*, 376 U.S. 254, 292 (1964). This is the very thing that the U.S. Supreme Court sought to avoid when it adopted the onerous "actual malice" standard. *Id.* Plaintiff flails to articulate any evidence—let alone clear and convincing evidence—that could prove the "extremely high" standard that is actual malice. *See Atlanta Humane Soc'y v. Mills*, 274 Ga. App. 159, 165 (2005).

Plaintiff first (and most heavily) argues that Defendant *knew* that he did not get handed "what appeared to be a folded sheet of paper or a small envelope" "because Defendant was there, merely several feet away, watching the meeting unfold[.]" (Opp. at 7-8). But Plaintiff fails to support with any factual allegations how that account, even if false, was anything more than a mistake, a misremembering, or a misperception on a dark night. To meet constitutional muster, it is simply not enough to show that a statement was wrong; there must be proof that it was an intentional lie. And Plaintiffs' Amended Complaint offers none.

Clearly grasping at straws, Plaintiff next contends (as he did in his previous opposition) that because Defendant was Mr. Meadows's assistant, it could be inferred that she was "privy to [his] meetings and the details of those meetings, even when not physically part of them." (*Id.* at 11). This argument reflects the same implausible leap as Plaintiff's new contention that Defendant has plotted to connect Plaintiff to the January 6, 2021 events since she observed the Meadows meeting. There is nothing in Plaintiff's complaint that supports the unreasonable leap that Defendant's position as Mr. Meadows's assistant made her omniscient as to the nature and content of every meeting he ever held, including the secretive outdoor meeting after the Trump rally in

Rome, Georgia.[2]

Finally, for all the reasons stated in the Motion to Dismiss, Plaintiff's reliance on baseless accusations of a profit motive cannot support actual malice. (Dkt. 52 at 16). Indeed, they continue to reflect the same outlandish conjectures, proposing that Defendant has been plotting "to profit off of this innocuous meeting" since it occurred, all to sell a book she hadn't yet written about events that hadn't yet happened. (Opp. at 12). Plaintiff thus fails to meet the "daunting" standard that is actual malice. *See Parsi v. Daioleslan*, 890 F. Supp. 2d 77, 81 (D.D.C. Sept. 13, 2012).[3]

## II. Plaintiff's Claims for Defamation by Implication and False Light Fail as a Matter of Law.

### A. Plaintiff Cannot Establish an Actionable Defamatory Implication.

Plaintiff argues that "Defendant's underlying descriptions of how she *felt* about Mr. Bobulinski's meeting with Mr. Meadows" created an "implication" that is "a provable fact." (Opp. at 13). But by Plaintiff's own admission, Defendant's "underlying descriptions" are nothing more than expressions of *her* subjective *feelings*, which cannot be proven true or false. (*Id.*). Plaintiff leaps to the conclusion that Defendant's descriptions of her personal feelings surrounding the meeting between Mr. Bobulinski and Mr. Meadows give "clear indication that Defendant intended to portray the otherwise innocuous meeting as something that was involved in a much larger

---

[2] It is also contradicted by the very book passages that Plaintiff quotes in the Amended Complaint: Ms. Hutchinson writes that she was near enough to *observe* the meeting but was not *part* of it. (FAC ¶ 44). She describes her subsequent interactions with Mr. Meadows, neither of which involve his discussing his meeting with Plaintiff. (FAC ¶¶ 44, 61).

[3] Additionally, Defendant made clear the limited information she had on Plaintiff and the *unexplainable feelings* fueling her concerns about the meeting. (FAC ¶ 49). Here, where "it is plain that a speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable." *Clemmons v. Acad. For Educ. Dev.*, 70 F. Supp. 3d 282, 309 (D.D.C. 2014) (quoting *Guilford Transp. Indus., Inc. v. Wilner*, 760 A.2d 580, 597 (D.C. 2000)).

immoral and/or illegal scheme." (*Id.* at 14). Taking yet another leap, Plaintiff argues that Defendant's description of the private meeting between Mr. Meadows and Mr. Bobulinski amounted to Defendant "[a]ccusing Mr. Bobulinski of involvement with the events of January 6, 2021," which is not plausible. (*Id.* at 5, 15). Defendant's statements make no such accusation, nor could any such implication be gleaned from them, because at the time of the meeting between Mr. Bobulinski and Mr. Meadows, neither Defendant nor Plaintiff could not have predicted any of the events leading up to January 6, 2021.

Plaintiff's citation to *Parnigoni v. St. Columba's Nursery School* is unavailing. *Parnigoni* involved multiple statements by a school's administration to its stakeholders that were expressly intended to share the "facts" about a schoolteacher's marriage to a convicted sex offender because "parents were entitled to information that may impact the safety of their children" and to "enable parents to make informed decisions as to whom they should entrust the care and supervision of their children." 681 F. Supp. 2d at 8-10. The Court held that these statements sufficiently created a defamatory inference about the teacher that she "posed a danger" to children solely due to her decision to marry her husband and "conveyed the impression that [the teacher] lacked sound judgment and implied that parents should have concerns about entrusting the care of their children to her." 681 F. Supp. 2d at 8-10, 15-16. By contrast here, nothing in Defendant's statements about the meeting between Mr. Bobulinski and Mr. Meadows suggests she is sharing "facts" about any specific "nefarious" activity by Mr. Bobulinski, as Plaintiff claims. To the contrary, the context surrounding Defendant's statements make clear she does not have any facts about Plaintiff and that her statements are rooted in her personal feelings about the meeting and her work for President Trump.

Likewise, Plaintiff's citation to *Barrett v. Atl. Monthly Grp. LLC* is inapposite here. 2024 U.S. Dist. LEXIS 161266 (D.D.C. Sept. 9, 2024). (Opp. at 15-16). In *Barrett*, this Court makes clear that published statements referencing the plaintiff's past commitment of "journalistic malpractice" and needing a "'second chance' as a result of that malpractice," had "implicit factual foundation[s]" that were "objectively verifiable." 2024 U.S. Dist. LEXIS 161266, at *41-42. Here, however, Defendant never asserts the implications that Plaintiff is inferring (i.e., that he was involved in something "bad, possibly illegal" or an "immoral and/or illegal scheme" (Opp. at 5, 6, 7)), nor could Defendant's subjective expression of feelings from which Plaintiff draws those inferences be adjudicated as "objectively verifiable."

Finally, Plaintiff's attempts to distinguish *Bauman* are unavailing.  *Bauman* held that a defendant's statements about the DNC's "nefarious activities" did not imply that the plaintiff's job was to "execute the DNC's plan to cover up [a] murder." 377 F. Supp. 3d at 15. *Bauman* thus establishes that the law does not tolerate attempts to manufacture defamatory statements. Just like in that case, Plaintiff's accusation of a defamatory implication is based on a wild leap of the imagination—taking what Defendant actually wrote and twisting it into a personal accusation she never made. *Bauman* clearly forecloses Plaintiff's claim of defamation by implication.

**B.    Plaintiff Fails to Plead the Necessary Elements of a False Light Claim.**

As for the false light claim, Plaintiff does not dispute that the allegations underpinning this claim overlap entirely with those underpinning his defamation claim. (Opp. at 16). Because Plaintiff cannot transform Defendant's constitutionally protected speech—her expressions of her subjective feelings about the Meadows meeting and her work for President Trump—into a tort simply by calling his claim by another name, this claim should be dismissed for all the same

reasons as Plaintiff's defamation claim: failure to plead a false and defamatory statement and actual malice. (*See* Dkt. 52 at 19–20).

In an attempt to salvage his case, Plaintiff tries to argue that the purported implication that Plaintiff was "committing illicit, immoral, or illegal acts" would be highly offensive to a reasonable person (though he does not dispute that the paper-handoff statement on its own is not). (Opp. at 16-17). For support, Plaintiff cites to a case in which the plaintiff alleged the defendant "falsely impl[ied] he was a drug user when the defendant was well aware that '95% of positive test results at the Clinic in the six months immediately preceding plaintiff's test were erroneous." (Opp. at 17–18 (discussing *White v. Fraternal Order of Police*, 909 F.2d 512 (D.C. 1990)). Again, however, the critical difference between these two cases is made clear by Plaintiff's own arguments: whereas *White* involved a clear and specific accusation of drug use, all Plaintiff can offer is a nebulous, vague accusation, amounting to, in his own words, of something "bad, possibly illegal." Arguing such an amorphous statement is sufficient to be "highly offensive to a reasonable person," is like arguing a side-long glance or raised eyebrow is "highly offensive." The law requires more.

## III.    The Court Should Deny Leave to Amend.

In response to Defendant's 12(b)(6) arguments, Plaintiff already amended his complaint to overcome the deficiencies. Plaintiff thus has had two attempts to plead viable claims.[4] He does not

---

[4] It should go without saying that Plaintiff's citation to ad hoc comments made from the bench by the Northern District of Georgia Judge who preside over this case before finding the Court lacked jurisdiction. (Opp. at 19). First, because Judge Ray held there was no personal jurisdiction to keep the case before him, his passing commentary of the merits can have no weight. Second, Judge Ray's comments were based on the parties' briefing and arguments applying only Georgia law, whereas now, the parties agree D.C. law applies (which Judge Ray never considered). Third, Judge Ray expressly stated that the quoted comment was not a final, fully deliberated assessment, expressly reserving his right to "change his mind." (Dkt. 55-1). For all these reasons, Plaintiff's

get another bite at the apple. *See DAG Enters. v. Exxon Mobil Corp.*, 2004 U.S. Dist. LEXIS 27393, at *18-19 (D.D.C. Feb. 2, 2004) (courts may deny motions for leave to amend complaints for "repeated failure to cure deficiencies by [previous] amendments") (citing *Firestone v. Firestone,* 76 F.3d 1205, 1208 (D.C. Cir. 1996)).

## <u>CONCLUSION</u>

For all the reasons stated herein and in Defendant's Motion to Dismiss (Dkt. 52), the Court should grant the Motion without leave to amend.


Dated: May 30, 2025                     Respectfully submitted,

                                        */s/ Edward T. Kang*
                                        Edward T. Kang (D.C. Bar No. 1011251)
                                        **ALSTON & BIRD LLP**
                                        950 F Street NW
                                        Washington, DC 20004-1404
                                        Telephone: (202) 239-3300
                                        Edward.Kang@alston.com

                                        Christina Hull (*pro hac vice*)
                                        Jyoti J. Kottamasu (*pro hac vice*)
                                        Taylor Lin (*pro hac vice*)
                                        **ALSTON & BIRD LLP**
                                        1201 West Peachtree Street
                                        Atlanta, GA 30309-3424
                                        Telephone: (404) 881-7000
                                        Christy.Hull@alston.com
                                        Jyoti.Kottamasu@alston.com
                                        Taylor.Lin@alston.com

                                        *Counsel for Defendant*

---

attempt to submit those comments from the bench as persuasive authority is without merit and inappropriate.