**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

ANTHONY BOBULINSKI,

　　　　　　Plaintiff,

　v.

CASSIDY HUTCHINSON,

　　　　　　Defendant.

Civil Action No. 25-771 (EGS)

<u>**MEMORANDUM OPINION**</u>

　　　Plaintiff Anthony Bobulinski ("Mr. Bobulinski") brings this action against Defendant Cassidy Hutchinson ("Ms. Hutchinson") in a three-count Complaint alleging Defamation, Defamation by Implication, and False Light Invasion of Privacy arising out statements in Ms. Hutchinson's book entitled "Enough." *See generally* Compl., ECF No. 1.[1]

　　　Pending before the Court is Ms. Hutchinson's Motion to Dismiss, ECF No. 52. Upon careful consideration of the Motion, Opposition, Reply, the applicable law, and for the reasons explained below, the Court **GRANTS** the Motion to Dismiss.

---

[1] When citing electronic filings throughout this opinion, the Court cites to the ECF header page number, not the original page number of the filed document.

## I.    Background

### A. Factual

The following facts are taken from the allegations in the Complaint, which the Court assumes are true for the purposes of deciding this motion and construes in Mr. Bobulinski's favor. *See Baird v. Gotbaum*, 792 F.3d 166, 169 n.2 (D.C. Cir. 2015).

Mr. Bobulinski is a "decorated Navy veteran and successful businessman." Am. Compl., ECF No. 20 ¶ 10. After his military service, Mr. Bobulinski joined Hunter Biden in or around 2017 as a business partner serving as CEO of SinoHawk Holdings, "a company designed to find investments in the United States." *Id.* ¶ 13. Mr. Bobulinski subsequently "confirmed to the United States Senate the veracity of [] emails [indicating] that Joe Biden was involved with his son's business dealings with foreign nations, and that the Biden family accepted money from foreign nations." *Id.* ¶ 18.

"On November 1, 2020, Mr. Bobulinski attended one of President Trump['s] campaign rallies in Rome, Georgia, and briefly met with Mark Meadows, President Trump's Chief of Staff, during the rally." *Id.* ¶ 23. Ms. Hutchinson served as principal assistant to Mr. Meadows, *id.* ¶ 24; and in September 2023 published a book entitled, *Enough*, *id.* ¶ 42. In the book, Ms. Hutchinson describes the meeting between Mr. Bobulinski and Mr. Meadows at the campaign rally as follows:

> In the shadows of the bleachers, I observed Mark and Tony Bobulinski's interaction through a gap in the vehicles. When they said their goodbyes, I saw Mark hand Tony what appeared to be a folded sheet of paper or a small envelope.

*Id.* ¶ 44 (quoting Cassidy Hutchinson, Enough (2023) at 221). Mr. Bobulinski alleges that Ms. Cassidy's statement is false: "at no point did Mr. Meadows hand Mr. Bobulinski any sheet of paper or envelope." *Id.* ¶ 45.

Mr. Bobulinski alleges that Ms. Hutchinson "made this accusation to imply that Mr. Bobulinski was involved with some sort of shady business dealing with Mr. Meadows," and that her commentary and juxtaposition of other facts creates a "defamatory implication." *Id.* ¶¶ 46, 47. In support, he quotes the following text:

> I didn't know much about Tony Bobulinski, just that he was a former business associate of Hunter Biden's and had something to do with the laptop controversy. Trump had brought him as a guest to the presidential debate in Nashville on October 22. I wasn't tracking the story closely enough to know more. But as Mark approached, I had a weird feeling that we were in danger. I couldn't explain it, but the feeling was real. "Mark shouldn't do this," I said to Tony [sic]. "He's being set up." Tony shrugged. "Don't overthink things. It's not a big deal. Chief knows what he's doing. Bobulinski came with us to Nashville, remember? Don't worry, kid." He patted my shoulder and walked away as Mark approached me.
>
> "You're not meeting Tony Bobulinski here, Mark. We can send someone from the campaign."

3

> I heard my voice whine with childlike desperation. "Please, Mark. This isn't a good idea. Just trust me." Mark looked at his Secret Service agent, then back at me. "Just go find him, and work with Secret Service to find a hidden spot. Come get me once you have him there."
>
> . . .
>
> "This is really stupid of you, Mark. I don't know what's going on, but it's really stupid," I said. He didn't have time to respond as I ushered him into the makeshift area, away from cameras, as requested, but not from watchful Secret Service eyes.
>
> . . .
>
> I had done what they had asked of me, not questioning it, but now I started to put together all the moments like this one that didn't add up. I could not shake the feeling that I had been entangled in something far more complex and secretive than I had initially realized.

*Id.* ¶ 49 (quoting CASSIDY HUTCHINSON, ENOUGH (2023) at 218-222).

Mr. Bobulinski does not dispute that he and Mr. Meadows met that day, but states that while it was "an innocent meeting," Ms. Hutchinson's description "provided the false implication" that the two "were involved in some sort of nefarious dealings, and painted Mr. Bobulinski in a false and negative light." *Id.* ¶ 50. He states that the meeting between himself and Mr. Meadows was "simply an exchange of pleasantries" and that Mr. Meadows wanted to check on "the well-being of Mr. Bobulinski and his family" after being thrust into the public spotlight "for simply

4

telling his firsthand account of the truth about the Biden family." *Id.* ¶¶ 51, 52, 54.

### B. Procedural

On March 4, 2024, Mr. Bobulinski filed suit against Ms. Hutchinson in the Northern District of Georgia, *see* Compl., ECF No. 1; and Ms. Hutchinson filed a Motion to Dismiss, *see* Mot. to Dismiss, ECF No. 17. Mr. Bobulinski then filed a First Amended Complaint ("FAC") asserting state law claims for defamation, defamation by implication, and false light-invasion of privacy. *See generally* Am. Compl., ECF No. 20. Ms. Hutchinson moved to dismiss the FAC for lack of personal jurisdiction and failure to state a claim. *See generally* Mot. to Dismiss, ECF No. 25. The court in the Northern District of Georgia held a hearing on the Motion to Dismiss, and the court requested briefing on whether the case should be transferred for lack of personal jurisdiction over Ms. Hutchinson in lieu of dismissal. Mot. to Dismiss, ECF No. 52 at 9. Mr. Bobulinski then filed a Motion to Transfer, and Ms. Hutchinson objected to the transfer in lieu of dismissal. *Id.*

On March 17, 2025, the court in the Northern District of Georgia granted in part Ms. Hutchinson's Motion to Dismiss and transferred the case. Order, ECF No. 41. The case was assigned to this Court in March 2025. On March 25, 2025, the parties filed a joint motion for leave to file supplemental briefing and

set a briefing schedule. Mot. for Leave to File Suppl. Br., ECF No. 45. This Court granted the motion, and Ms. Hutchinson filed her renewed Motion to Dismiss, *see* Mot. to Dismiss, ECF No. 52; which Mr. Bobulinski opposed, *see* Opp'n, ECF No. 55; and to which Ms. Hutchinson filed a Reply, Reply, ECF No. 56. The motion is ripe and ready for the Court's adjudication.

## II.  Legal Standard

### A. Motion to Dismiss

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, (2007) (internal quotation marks omitted).

Despite this liberal pleading standard, to survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "In determining whether a complaint fails to state a claim, [the court] may consider only the facts alleged in the complaint, any documents

6

either attached to or incorporated in the complaint and matters

of which [the Court] may take judicial notice." *EEOC v. St.*

*Francis Xavier Parochial Schl.*, 117 F.3d 621, 624 (D.C. Cir.

1997). A claim is facially plausible when the facts pled in the

complaint allow the court to "draw the reasonable inference that

the defendant is liable for the misconduct alleged." *Id.* The

standard does not amount to a "probability requirement," but it

does require more than a "sheer possibility that a defendant has

acted unlawfully." *Id.*

"[W]hen ruling on a defendant's motion to dismiss [pursuant

to Rule 12(b)(6)], a judge must accept as true all of the

factual allegations contained in the complaint." *Atherton v.*

*D.C. Office of the Mayor*, 567 F.3d 672, 681 (D.C. Cir.

2009) (internal quotation marks omitted). In addition, the court

must give the plaintiff the "benefit of all inferences that can

be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*,

16 F.3d 1271, 1276 (D.C. Cir. 1994).

### III. Analysis

#### A. Mr. Bobulinski Fails to State a Claim for Defamation

To state a defamation claim under District of Columbia law,[2]

the plaintiff must allege: "(1) that the defendant made a false

and defamatory statement concerning the plaintiff; (2) that the

---

[2] The parties do not dispute that District of Columbia law
applies.

defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm." *Solers, Inc. v. Doe*, 977 A.2d 941, 948 (D.C. 2009) (quoting *Oparaugo v. Watts,* 884 A.2d 63, 76 (D.C. 2005) (quoting *Crowley v. North Am. Telecomms. Ass'n,* 691 A.2d 1169, 1173 n.2 (D.C. 1997)). "The third element, fault, depends on whether the plaintiff is a public figure, subject to the heightened actual malice standard of proof, or is instead a private individual, subject to the lower negligence standard." *Barrett v. Atlantic Monthly Group, LLC*, Civil Action No. 22-49, 2024 WL 4119400 (D.D.C. Sept. 9, 2024) (citing *Competitive Enter. Inst. v. Mann*, 150 A.3d 1213, 1240 n.33 (D.C. 2016)).

"[I]t is the role of the court to determine whether the challenged statement is 'capable of bearing a particular meaning' and whether 'that meaning is defamatory'". *Tavoulareas v. Piro,* 817 F.2d 762, 779 (D.C. Cir. 1987) (en banc) (quoting *Restatement (Second) of Torts* § 614(i), at 311 (1977)), *cert. denied,* 484 U.S. 870 (1987). "A statement is defamatory 'if it tends to injure the plaintiff in his trade, profession or community standing, or lower him in the estimation of the community.'" *Liberty Lobby, Inc. v. Dow Jones & Co.,* 838 F.2d

8

1287, 1293-94 (D.C. Cir.) (quoting *Howard Univ. v. Best,* 484 A.2d 958, 988 (D.C. 1984)), *cert. denied,* 488 U.S. 825 (1988). "[A]n allegedly defamatory remark must be more than unpleasant or offensive; the language must make the plaintiffs appear 'odious, infamous, or ridiculous.'" *Best,* 484 A.2d at 989 (quoting *Johnson v. Johnson Publ'g Co.,* 271 A.2d 696, 697 (D.C. 1970)). In deciding whether a statement is capable of a defamatory meaning, "the publication must be considered as a whole, in the sense it would be understood by the readers to whom it was addressed." *Best,* 484 A.2d at 989 (citation omitted). "'Context' is a critical legal concept for determining whether, as a matter of law, a statement is reasonably capable or susceptible of a defamatory meaning." *Klayman v. Segal*, 783 A.2d 607, 614 (D.C. Cir. 2001).

The court is not to dismiss a complaint alleging defamation pursuant to Rule 12(b)(6) if "the communications of which the plaintiff complains were reasonably susceptible of a defamatory meaning." *Id.* at 612 (quoting *Wallace v. Skadden, Arps, Slate, Meagher & Flom,* 715 A.2d 873, 875 (D.C. 1998); *see also Weyrich, supra,* 344 U.S. App. D.C. at 255, 235 F.3d at 627 ("Whether a statement is capable of defamatory meaning is a question of law, but 'it is only when the court can say that the publication is not reasonably capable of any defamatory meaning and cannot be reasonably understood in any defamatory sense that

9

it can rule as a matter of law, that it was not libelous.'") (quoting *White v. Fraternal Order of Police,* 909 F.2d 512, 518 (D.C. Cir. 1990) (quoting *Levy v. American Mut. Ins. Co.,* 196 A.2d 475, 476 (D.C. 1964))). "The plaintiff has the burden of proving the defamatory nature of the publication [citation omitted], and the publication must be considered as a whole, in the sense in which it would be understood by the readers to whom it was addressed." *Best,* 484 A.2d at 989 (citation omitted).

Mr. Bobulinski agrees that while the statement that Mr. Meadows handed Mr. Bobulinski a sheet of paper or envelope "by itself may not be defamatory," it becomes defamatory "when considered in the inflammatory context as was intended." Opp'n, ECF No. 55 at 9-10. Mr. Bobulinski argues that the "statements occurred in the context of her book," which "tells Ms. Hutchinson's story about what supposedly led her to testify about January 6, 2021, and its aftermath," and "her description of the subject meeting." *Id.* at 10. Mr. Bobulinski argues that this context "plausibly implies Mr. Bobulinski's meeting with Mr. Meadows had something to do with the leadup to the events on January 6, 2021, and why [Ms. Hutchinson] testified. Accusing Mr. Bobulinski of involvement with the events of January 6, 2021, is defamatory as it implies potential criminal conduct and is likely to subject him to contempt from the community at large." *Id.* at 11.

10

Mr. Bobulinski also points to Ms. Hutchinson's "grim rhetoric" about the meeting. *Id*. Specifically, he points to Ms. Hutchinson's statements that "she 'had a weird feeling that [she] was in danger,' and the feeling 'was real,'" *id*. (quoting Am. Compl., ECF No. 20 ¶ 49); that "[s]he whined 'with childlike desperation' to Mr. Meadows that the meeting was not a good idea, was 'really stupid' and that she 'could not shake the feeling that [she] had been entangled in something far more complex and secretive than [she] had initially realized,'" *id*. (quoting Am. Compl., ECF No. 20 ¶ 49); that she had "a 'pit in [her] stomach' after the meeting and feeling 'shame' and that she had 'betrayed the world,'" *id*. (quoting Am. Compl., ECF No. 20 ¶ 61). Mr. Bobulinski concludes that "the reasoning for why [Ms. Hutchinson] wrote the book, and her surrounding statements about the meeting, provide sufficient context to give a defamatory meaning to [Ms. Hutchinson's] statement that Mr. Meadows secretly handed Mr. Bobulinski 'what appeared to be a folded sheet of paper or a small envelope.'" *Id*. at 11- 12.

The Court concludes, as a matter of law, that the statement and the context in which it was made—both the reason Ms. Hutchinson wrote the book and her "grim rhetoric"—are not reasonably susceptible of the defamatory meaning Mr. Bobulinski suggests. The statement coupled with reason Ms. Hutchinson wrote the book does not reasonably imply that the meeting had

11

something to do with January 6, 2021 and the reason Ms. Hutchinson chose to testify about it. The meeting between Mr. Bobulinski and Mr. Meadows occurred on November 1, 2020, prior to the 2020 presidential election and nearly two months before January 6, 2021. Furthermore, Mr. Bobulinski does not point to any specific language in the book that would support this connection.

The "grim rhetoric" Mr. Bobulinski points to consists of Ms. Hutchinson's feelings about the meeting. "[I]f it is plain that a speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable." *Guilford Transp. Indus., Inc. v. Wilner,* 760 A.2d 580, 597 (D.C. 2000) (quotation omitted). In other words, "a statement of opinion is actionable if—but only if—it has an explicit or implicit factual foundation and is therefore objectively verifiable." *Rosen v. American Israel Public Affairs Committee, Inc.*, 41 A.3d 1250, 1256 (D.C. 2012)(citation omitted). Mr. Bobulinski argues that Ms. Hutchinson's "factual descriptions imply something illicit, immoral, or illegal was occurring" and that because this is "provably false," her statements are actionable. Opp'n, ECF No. 55 at 13. However, Ms. Hutchinson does not claim in the statements Mr. Bobulinski cites "to be in possession of

objectively verifiable facts." Nor do the statements imply that there is a factual foundation for them. Rather, Ms. Hutchinson discusses her feelings about the meeting. Finally, the statements Mr. Bobulinski points to cannot be proven false. It cannot be proven false that Ms. Hutchinson had the various feelings she described having about the meeting.

For all these reasons, Mr. Bobulinski fails to state a claim for defamation. Because the Court has determined that, as a matter of law, the statement is not defamatory, the Court need not reach whether Mr. Bobulinski qualifies as a limited purpose public figure nor whether the statement was made with negligence or malice. Accordingly, Mr. Bobulinski's claim for defamation is **DISMISSED**.

### B. Mr. Bobulinski Fails To State a Claim for Defamation By Implication

"In a defamation by implication case under D.C. law, 'the courts are charged with the responsibility of determining whether a challenged statement is capable of conveying a defamatory meaning.'" *Tah v. Glob. Witness Publ'g, Inc.*, 991 F.3d 231, 239-40 (D.C. Cir. 2021) (quoting *White v. Fraternal Order of Police*, 909 F.2d 512, 518 (D.C. Cir. 1990) (internal quotation marks omitted). "A plaintiff must show first that the 'communication, viewed in its entire context, ... conveys materially true facts from which a defamatory inference can

13

reasonably be drawn,' and second, that 'the communication, by the particular manner or language in which the true facts are conveyed, supplies additional, affirmative evidence suggesting that the defendant intends or endorses the defamatory inference.'" *Id.* at 240 (quoting *Armstrong v. Thompson*, 80 A.3d 177, 184 (D.C. 2013) (emphasis omitted) (quoting *White*, 909 F.2d at 520)). "A defamation by implication stems not from what is literally stated, but from what is implied." *White*, 909 F.2d at 518 (citing *Tavoulareas,* 817 F.2d at 780).

Mr. Bobulinski argues that he has stated a claim for defamation by implication because while Ms. Hutchinson "gave a series of true facts"—specifically "that Mr. Bobulinski met with Mr. Meadows at a Trump rally in Rome, Georgia," she "included her own inflammatory commentary to make [the meeting] appear illicit, immoral, or illegal." Opp'n, ECF No. 55 at 18-19. Mr. Bobulinski argues that even if Ms. Hutchinson's "descriptions of how she felt about Mr. Bobulinski's meeting with Mr. Meadows may have been opinion, that is of no consequence because the implication is a provable fact. Indeed, [Ms. Hutchinson] gave the implication Mr. Bobulinski, in his meeting with Mr. Meadows, was involved in something illicit or illegal. This can be proven true or false, removing it from the protections of opinion." *Id*. at 19.

In support, Mr. Bobulinski first cites *Parnigoni v. St. Columba's Nursery School* for "where context is important." In *Parnigoni,* a nursery school sent letters to parents of children attending the school that identified the plaintiff, a teacher at the school, as the wife of a convicted sex offender, and suggested to the parents that the information provided may impact their decisions about the safety of their children. *Parnigoni v. St. Columba's Nursery School,* 681 F. Supp. 2d 1, 15 (D.D.C. 2010). The court found that "the letters and the circumstances surrounding their dissemination" "reasonably implied" that the plaintiff "posed a danger to children as a result of her decision to marry" her husband. *Id.* Mr. Bobulinski argues that this is similar because Ms. Hutchinson's "description of the meeting, appearing in a book about the lead up to January 6, 2021–makes it appear as if Mr. Bobulinski was involved in an immoral or illegal scheme, as part of the lead up to January 6, 2021, simply by virtue of the fact that he met with Mr. Meadows in private at a rally for President Trump." Opp'n, ECF No. 55 at 21. The Court has already rejected this argument *supra*.

Next, Mr. Bobulinski cites *Barrett v. Atl. Monthly Grp. LLC*. In *Barrett,* the court found that a magazine editor's statement that a journalist was hoping to "disguise" past accusations "of plagiarism and journalistic malfeasance" by

15

using her married name in a byline, and that the outlet should have used her original name in "the interest of transparency to [its] readers" was capable of defamatory meaning. *Barrett,* 2024 WL 4119400, at *13. The court found that this statement would lead a reasonable reader to "believe the negative implications of the statements" because no other truthful facts related to the reporter or the byline were presented, and the statement contained an "implicit factual foundation" that was "objectively verifiable." *Id.* at *14 (citations omitted). Mr. Bobulinski argues that this case helps him because Ms. Hutchinson "only presented her negative context of the meeting between Mr. Bobulinski and Mr. Meadows, leaving no room for other interpretation." Opp'n, ECF No. 55 at 22. The Court disagrees. A reasonable reader could "draw his or her own conclusions" about the nature of the meeting since the statements are based on her subjective feelings. *Barrett,* 2024 WL 4119400, at *14.

Furthermore, in both *Parnigoni* and *Barrett* there is "affirmative evidence suggesting that the defendant *intends* or *endorses* the defamatory inference." *Armstrong*, 80 A.3d at 184 (emphasis omitted) (quoting *White*, 909 F.2d at 520). In *Parnigoni*, such evidence was the suggestion that a criminal conviction should inform parents' decisions about their children's safety; in *Barrett,* such evidence was the statement that the plaintiff attempted to conceal her maiden name and past

16

mistakes associated with it. *Parnigoni,* 681 F. Supp. 2d at 13; *Barrett*, 2024 WL 4119400, at *14. But here, Ms. Hutchinson's remarks point to feelings of suspicion, unease, and that something "complex" and "secretive" was afoot. Mot. to Dismiss, ECF No. 52 at 12 (citing Compl., ECF No. 1 ¶¶ 49, 61). Ms. Hutchinson "stopped short" of an actual accusation of wrongdoing.

For all these reasons, the Court concludes, as a matter of law, that the challenged statements do not imply a defamatory meaning. Accordingly, Mr. Bobulinski's claim for defamation by implication is **DISMISSED.**

### C. Mr. Bobulinski Fails to State a Claim for False Light Invasion of Privacy

A claim for false light invasion of privacy "requires a showing of (1) publicity, (2) about a false statement, representation or imputation, (3) understood to be of and concerning the plaintiff, and (4) which places the plaintiff in a false light that would be offensive to a reasonable person." *Blodgett v. Univ. Club*, 930 A.2d 210, 222 (D.C. 2007) (quoting *Oparaugo v. Watts,* 884 A.2d 63, 76 (D.C. 2005). Where a plaintiff relies on the same underlying conduct to assert claims for defamation and invasion of privacy, those claims may be analyzed in a "like manner." *Harrison v. Washington Post Co.*, 391 A.2d 781, 784 n.8 (D.C. 1978). The Court has found, as a

17

matter of law, that Ms. Hutchinson's statements are not reasonably susceptible of a defamatory meaning. Therefore, Mr. Bobulinski's claim for false light invasion of privacy also fails. *See Klayman,* 783 A.2d at 619 (finding that challenged statement was not defamatory and "for the same reasons" did not place the plaintiff in a false light and noting that a "plaintiff may not avoid the strictures of the burdens of proof associated with defamation by resorting to a claim of false light invasion") (internal citations and quotation marks omitted).

Furthermore, Mr. Bobulinski's reliance on *White v. Fraternal Order of Police* is unavailing. In *White,* the defendant publicized that the plaintiff tested positive for marijuana, that a laboratory subsequently produced a negative result but it "should easily have been confirmed," and that the test samples contained irregularities and were not handled according to official procedures. *White,* 909 F.2d at 521-22. The plaintiff argued that the defendant's portrayal painted him in a false light particularly given that "95% of positive test results at the Clinic in the six months immediately preceding plaintiff's test were erroneous." *Id.* The Court of Appeals for the D.C. Circuit held that whether the defendant's statement portrayed the plaintiff in a false light was a question for the jury because it was "reasonable for a reader to infer that White used

18

an illegal drug." *Id.* at 522. However, Ms. Hutchinson's description of the meeting between Mr. Bobulinski and Mr. Meadows, accompanied by her subjective feelings of unease, would not be as "highly offensive to a reasonable person" as implying illegal drug use. *White,* 909 F.2d at 522.

Accordingly, Mr. Bobulinski's claim for false light invasion of privacy is **DISMISSED**.

### V. Conclusion

For the reasons set forth above, the Court **GRANTS** Ms. Hutchinson's Motion to Dismiss, ECF No. 52; and **DISMISSES** the case without prejudice.

An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

**Signed:    Emmet G. Sullivan**
            **United States District Judge**
            **March 24, 2026**

19